UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JULIAN EARL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 19-1214-JDT-cgc |
| ) | |
| QUALITY CORRECTIONAL HEATH ) | |
| CARE, ET AL., ) | |
| ) | |
| Defendants. ) | |

ORDER DISMISSING COMPLAINTS, GRANTING LEAVE TO
FURTHER AMEND AND DENYING PENDING MOTIONS

On September 16, 2019, Plaintiff Julian Earl, a former inmate at the Madison County Criminal Justice Complex (CJC) in Jackson, Tennessee, filed a *pro se* civil complaint and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court issued an order on October 21, 2019, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 11.) After Earl informed the Clerk he was no longer incarcerated (ECF No. 14), the Court directed him to either renew his pauper status or pay the remainder of the civil filing fee. (ECF No. 15.) Earl complied, (ECF No. 17), and the Court granted his motion to renew his *in forma pauperis* status. (ECF No. 19.)

Earl also has filed two amended complaints, (ECF Nos. 5 & 7), which appear to supplement, rather than supersede, his original complaint. The Court will therefore

consider the allegations in all three complaints. The Clerk shall record the Defendants as Quality Correctional Health Care (QCHC) and Madison County.[1]

Earl alleges that on August 31, 2019, he was taken from the CJC to Jackson General Hospital for a heart attack he had suffered. (ECF No. 1 at PageID 2.) After he returned to the CJC on September 3, 2019, his defibrillator[2] "started going off every morning at 10:20AM." (*Id.*) He alleges he has complained "to Medical" about the issue, but they assured him that "it was suppose[d] to do this." (*Id.*)

Earl separately alleges that when he first arrived at the CJC, he was given no medication for seven days, even though he brought the medication with him. (*Id.*) He also was forced to sleep on cold concrete for five days, which drained the batteries in his defibrillator and caused his heart rate to spike, even though CJC staff was aware of his heart condition. (*Id.* at PageID 2-3; ECF No. 5 at PageID 15.) Earl alleges that after his emergency hospital visit, CJC staff "was informed to give me 2 mattresses," but they did not provide any. (ECF No. 5 at PageID 15.)

Earl further alleges that he was sent back to the hospital for two weeks, which he had to spend in the ICU because of his malfunctioning defibrillator. (ECF No. 7 at

---

[1] Earl lists the Madison County Jail and "Medical Department" as Defendants. (ECF No. 5 at PageID 14; ECF No. 7 at PageID 22.) Neither the Madison County Jail nor its Medical Department are entities subject to suit under § 1983. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). The Court will therefore construe his allegations as claims against Madison County.

[2] The Court assumes Earl's reference to a "Felibator" is to a defibrillator. (ECF No. 1 at PageID 2.)

PageID 22.) He again returned to the CJC with a new heart medication, of which he alleges he was told not to miss a single dose or he "would be right back in the E.R." (*Id.*) Yet, he alleges, "the facility here still would not acknowledge this[,] and they had to rush me back up front until they got them." (*Id.*)

Earl alleges that unnamed CJC staff either refused him medication or improperly discontinued it in 2016 and in August 2018. (*Id.* at PageID 23.) He accuses the CJC medical department of "totally neglect[ing] the[ir] job of giving the proper medical attention and responding in a timely fashion." (*Id.*) He also complains about the delay in, and costs of, receiving treatment and alleges that unnamed nurses mis-prescribe medication. (*Id.* at PageID 23-24.) He also alleges that grievances he has submitted about the problems with the medical staff and treatment have gone unanswered. (*Id.* at PageID 27.)

Earl wants "the Medical Staff & Agency held accountable for their Medical Neglect" and unspecified compensation. (ECF No. 1 at PageID 5; ECF No. 5 at PageID 16.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint─

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Earl filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Earl seeks to hold QCHC responsible for the alleged inadequate medical treatment. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against QCHC, Earl "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

Earl has not alleged that a policy or custom of QCHC was the "moving force" behind the alleged violations of his constitutional rights. He instead complains about the actions of various unnamed nurses and doctors who presumably work for QCHC (though Earl does not make this clear). He therefore fails to state a claim against QCHC.

For similar reasons, Earl fails to state a claim against Madison County, which may be held liable *only* if Earl's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). As with his claims against QCHC, Earl does not allege that his inadequate medical attention is the result of a Madison County policy or custom. He instead alleges that various unnamed nurses and "medical staff" have mismanaged his treatment.

Nor does Earl state a claim against any individual. Some of Earl's claims are untimely. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007);

*see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)(1)(B). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). Earl signed his initial complaint on September 12, 2019. Therefore, any claim alleged to have occurred prior to September 12, 2018, is untimely.

Earl's remaining allegations do not name any individual responsible for his allegedly inadequate medical care. He seeks to sue the "Medical Department," unnamed nurses and doctors, "the staff" or "the jail staff," and "the medical staff." Those general allegations do not state a claim against any Defendant. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming that, because the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights," the complaint failed to state a claim for relief); *Gray v. Weber*, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of inmate's § 1983 complaint alleging denial of medical care against Defendants identified "only collectively as 'medical staff'").

To the extent Earl seeks relief for his unanswered grievances, he fails to state a claim. "There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. *Id.*

For all these reasons, Earl's complaints are subject to dismissal for failure to state a claim on which relief may be granted.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds that Earl should be given an opportunity to further amend his complaint.

In conclusion, the Court DISMISSES Earl's complaint and amended complaints for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to further amend, however, is GRANTED. Any further amendment must be filed within twenty-one (21) days after the date of this order, on or before **December 30, 2019**.

Earl is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an

amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Earl fails to file an amended complaint within the time specified, the Court will dismiss the case in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

Earl has moved to subpoena the entire medical staff of the CJC as well as various other CJC officers and staff. (ECF No. 8.) He also moves for the appointment of counsel. (ECF No. 18.) Because his complaint is still in the screening phase, and the Court has not yet directed that any Defendant should be served with process, his motions are premature. The motions are therefore DENIED without prejudice to refiling, if necessary, at a later, appropriate time.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE